# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**LANNETTA DANIELLE FARMER,**

    **Plaintiff,**

    v.                                  Civil Action 2:19-cv-2000
                                            Judge James L. Graham
                                            Magistrate Judge Chelsey M. Vascura

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Lannetta Danielle Farmer ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for social security period of disability, disability insurance, and supplemental security income benefits. This matter is before the Court on Plaintiff's Statement of Errors (ECF No. 7), the Commissioner's Memorandum in Opposition (ECF No. 10), Plaintiff's Reply Memorandum (ECF No. 11), and the administrative record (ECF No. 6). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

### I. PROCEDURAL HISTORY

Plaintiff filed her application for Title II and Title XVI Social Security Benefits on February 26, 2016, alleging that she had been disabled since June 26, 2015. (R. 298, 305.) On February 21, 2019, following administrative denials of Plaintiff's application initially and on reconsideration, a hearing was held before Administrative Law Judge Jeffrey Hartranft (the

"ALJ"). (*Id.* at 54–89.) Plaintiff, represented by counsel, appeared and testified. Medical Expert Jonathan Nusbaum, M.D. (the "ME") and vocational expert Jerry Olsheski (the "VE") also appeared and testified at the hearing. On February 27, 2019, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.* at 10–25.) On March 28, 2019, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. 1–6.) Plaintiff then timely commenced the instant action. (ECF No. 1.)

In her Statement of Errors (ECF No. 7), Plaintiff raises two contentions of error: (1) that the ALJ failed to properly evaluate the medical opinion evidence of her treating physician, Veena Gaddam, M.D., and the Medical Expert, Jonathan Nusbaum, M.D., in crafting Plaintiff's RFC; and (2) that the ALJ failed to properly evaluate Plaintiff's testimony.

## II. THE ALJ'S DECISION

On February 27, 2019, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 10–25.) At step one of the sequential

evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantially gainful activity since June 26, 2015, the alleged onset date of Plaintiff's disability. (*Id.* at 12.) The ALJ found that Plaintiff has the severe impairments of sacroiliitis, pseudo-seizures, degenerative arthritis of her spine, conversion disorder, bilateral knee arthritis, right wrist tendonitis, De Quervein's tenosynovitis, and obesity. (*Id.*) He further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 15–16.) At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> The claimant has the residual functional capacity (RFC) to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she can stand and/or walk one hour at a time and three hours total in a workday, sit for two hours at a time and six hours total in a workday, frequently handle and finger, occasionally climb ramps and stairs, and occasionally stoop, kneel, crouch, and crawl, but never climb ladders, ropes, or scaffolds. She must avoid workplace hazards such as unprotected heights and machinery. She must not engage in commercial driving.

(*Id.* at 17.)

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

3

At step five of the sequential process, the ALJ, relying on the VE's testimony, found that Plaintiff is capable of performing past relevant work as a dispatcher and appointment clerk. (*Id.* at 23.) The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. (*Id.* at 25.)

### III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits

or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## IV. ANALYSIS

As set forth above, Plaintiff raises the following two issues in her Statement of Errors (ECF No. 7): (1) that the ALJ failed to properly evaluate the opinion evidence of her treating physician, Veena Gaddam, M.D., and the Medical Expert, Jonathan Nusbaum, M.D., in crafting Plaintiff's RFC; and (2) that the ALJ failed to properly evaluate Plaintiff's testimony. The undersigned will consider each contention of error in turn.

**A.     The ALJ properly evaluated the opinion evidence.**

**1.     Dr. Gaddam, Plainitff's Treating Physician**

Plaintiff first asserts that the ALJ improperly discounted the opinions of her treating physician, Dr. Gaddam. (Statement of Errors 13, ECF No. 7.) The undersigned finds this contention of error to be without merit.

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(c). Where a treating source's opinion, like that of Dr. Gaddam, is submitted, the ALJ generally gives deference to it "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone . . . ." 20 C.F.R. § 416.927(c)(2); *Blakley*, 581 F.3d at 408. If the treating physician's opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors-namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source-in determining what weight to give the opinion.

*Id*. Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(c)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242).

There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222

6

(6th Cir. 2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(d). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(d); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

Here, Dr. Gaddam completed a Fibromyalgia Impairment Questionnaire and a Rheumatoid Arthritis Impairment Questionnaire, both dated December 2016 (R. 1478–89), as well as a Disability Impairment Questionnaire dated October 22, 2018 (R. 4335–39). In each of these questionnaires, Dr. Gaddam opined that Plaintiff has several severe restrictions, including that Plaintiff could stand for less than one hour per day, could sit for 1–3 hours per day, would require near-constant breaks to relieve pain, and could only occasionally use her hands to grasp, turn, twist, or engage in fine manipulations. (R. 1481, 1488–89, 4337.) In the October 22, 2018 Questionnaire, Dr. Gaddam also opined that Plaintiff must elevate both her legs to chest level or higher while sitting. (R. 4337.)

The ALJ explained that he gave "little weight" to Dr. Gaddam's opinions because they were inconsistent with the record and were unsupported by Dr. Gaddam's own treatment notes:

> I give little weight to the assessments of Dr. Gaddam. As summarized above, physical exams have generally documented substantially normal findings, and the claimant has been in no distress, only mild distress, or no acute distress on exams. Indeed, September and December 2018 physical exams from Dr. Gaddam's practice revealed entirely normal findings, including a normal gait, power, strength, tone, and reflexes with no motor deficit or atrophy (Ex. 43F/2, 8). I note that Dr. Gaddam did not actually treat the claimant for lupus, and there is no objective basis to support Dr. Gaddam's assessment of such marked and extreme limitations,

including the assessment that the claimant is required to elevate her legs to chest height.

(R. 22.)

The undersigned finds no error with the ALJ's consideration and weighing of Dr. Gaddam's opinion. The ALJ articulated the weight he afforded the opinion and properly declined to afford it controlling weight on the grounds it was unsupported by objective evidence and inconsistent with Dr. Gaddam's documentation of Plaintiff's physical examinations. Indeed, in many cases, Dr. Gaddam's check-box findings on the Questionnaires are opposite to her physical examination findings in her treatment notes. For instance, the Rheumatoid Arthritis Questionnaire states that Plaintiff has joint pain in her neck, right shoulders, left hip, mid back, both knees, lower back, both hands, both feed, and both wrists; reduced range of motion in her right shoulder and right knee; tenderness in both knees and her lower back; sensory loss in both hands and both feet; and swelling in both hands and both feet. (R. 1479.) Yet Dr. Gaddam's treatment notes from December 20, 2016 (the same date as the Rheumatoid Arthritis Impairment Questionnaire), reflect that Plaintiff experienced "no joint pain," was in "[n]o acute distress," had "[f]ull ROM [range of motion]," "no tenderness," "no swelling," "normal power and strength, normal tone, no sensory deficit, reflexes normal, normal gait." (R. 1658–59.) Plaintiff does report joint pain to Dr. Gaddam on two instances, but on both occasions, the pain was localized to a single area. (*See* January 30, 2017 Treatment Notes, R. 1664 (reporting left forefinger pain and stiffness); December 19, 2018 Treatment Notes, R. 4346 (reporting pain her left knee).) Nowhere in Dr. Gaddam's treatment notes, during the entire treatment period of November 2016 through December 2018, is there any indication of the chronic, widespread pain described by Dr.

Gaddam in each of the Questionnaires.[2] As the Sixth Circuit has held, an ALJ may properly assign little weight to opinions from treating sources "where the physician provided no explanation for the restrictions . . . and cited no supporting objective medical evidence." *Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x 563, 567 (6th Cir. 2016). The undersigned therefore concludes that the ALJ did not violate the treating physician rule or otherwise err in his consideration and weighing of Dr. Gaddam's opinion.

### 2. Dr. Nusbaum, Medical Expert

Plaintiff also challenges the ALJ's rejection of Dr. Nusbaum's recommendation that Plaintiff be limited to using her hands 50% of the work day. (Statement of Errors 16, ECF No. 7.) Dr. Nusbaum is the medical expert who undertook a review of Plaintiff's entire available medical record at the request of the ALJ. Because he is *not* a treating source for Plaintiff, his opinion is afforded no special status. But regardless of the source, in weighing a medical opinion, the ALJ must apply the factors set forth in 20 C.F.R. § 416.927(c), including the examining and treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the source. Further, "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, *7 (July 2, 1996).

Dr. Nusbaum, a non-treating and non-examining medical source, opined that "that the claimant was limited to sedentary work with occasional twisting and bending, and fine manipulation less than 50% of the workday. Dr. Nusbaum opined that the claimant could sit for

---

[2] Plaintiff states in her Statement of Errors that "[u]nfortunately, treatment notes from the initial visit and a visit on December 20, 2016 [with Dr. Gaddam] are not part of the certified administrative record though they are referenced in other reports (Tr. 1478, 1485)." (Statement of Errors 5, ECF No. 6.) However, treatment notes from Plaintiff's first two visits with Dr. Gaddam on November 29, 2016, and December 20, 2016, are located at R. 1654–62.

9

2 hours at a time and 6 hours in a workday, and stand and/or walk for 1 hour at a time and 3 hours total in a workday. Dr. Nusbaum opined that the claimant needed to avoid ladders, heights, machinery, and driving." (R. 21.)

The ALJ gave "significant, but not controlling weight" to Dr. Nusbaum's assessment and incorporated all his recommended limitations into the RFC, except for the 50% restriction on fine manipulation. (*Id.* at 17, 21.) In this regard, he explained:

> However, I do not find that the above-summarized longitudinal exams, which documented generally substantially normal findings, support Dr. Nusbaum's suggestion of the limitations to only occasional twisting and fine manipulation less than 50% of the workday. Rather, upper extremity findings were generally normal and support that the claimant could frequently handle and finger.

(*Id.* at 21.) The ALJ further noted that "'[F]requent' as defined under the relevant regulations means the ability to perform a task between one third and two thirds of a workday. Therefore, Dr. Nusbaum's testimony could be construed as consistent with the ability to frequently handle and finger." (*Id.* n. 1.) Moreover, many of Plaintiff's reported activities of daily living discussed by the ALJ require fine manipulation. (*See* R. 13 (discussing Plaintiff's reported activities of cooking, folding clothes, washing dishes, and counting change).) The undersigned therefore finds no error in the ALJ's consideration and weighing of Dr. Nusbaum's opinion. Accordingly, it is **RECOMMENDED** that Plaintiff's first contention of error be **OVERRULED**.

**B.     The ALJ properly evaluated Plaintiff's testimony.**

Plaintiff next asserts that the ALJ erred in evaluating her testimony regarding her disabling symptoms. (Statement of Errors 18, ECF No. 7.) The undersigned likewise finds this contention of error to be without merit.

For decisions rendered on or after March 28, 2016, the ALJ will evaluate a claimant's statements concerning the intensity, persistence, and limiting effects of symptoms of an alleged disability under SSR 16-3p. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). SSR 16-3p

10

superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996), which required the ALJ to evaluate the overall credibility of a plaintiff's statements. In contrast, SSR 16-3p requires the ALJ to evaluate the *consistency* of a plaintiff's statements, without reaching the question of overall *credibility*, or character for truthfulness. *See id.* at *11 ("In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person."). Although SSR 16-3p supersedes SSR 96-7p, "according to the very language of SSR 16-3p, its purpose is to 'clarify' the rules concerning subjective symptom evaluation and not to substantially *change* them." *Brothers v. Berryhill*, No. 5:16-cv-01942, 2017 WL 2912535, at *10 (N.D. Ohio June 22, 2017). The rules were clarified primarily to account for the difference between a credibility determination, which necessarily impacts the entirety of a claimant's subjective testimony, and a consistency determination, which applies only to specific statements regarding symptoms. *See* SSR 16-3p at *2. It follows, therefore, that the procedures for reviewing an ALJ's credibility assessment under SSR 16-3p are substantially the same as the procedures under SSR 96-7p. Accordingly, the undersigned concludes that existing case law controls to the extent it is consistent with the clarification of the rules embodied in SSR 16-3p's clarification.

The Sixth Circuit has provided the following guidance in considering an ALJ's credibility assessment:

> Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain. 20 C.F.R. § 416.929(a); *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994). First, the ALJ will ask whether the there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. §

11

> 416.929(a). Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities. *Id.*

*Rogers*, 486 F.3d at 247.

The ALJ's credibility determination "with respect to [a claimant's] subjective complaints of pain" is generally given deference. *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir. 2009) (quoting *Siterlet v. Sec'y of Health & Hum. Servs.*, 823 F.2d 918, 920 (6th Cir. 1987)). Despite this deference, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters*, 127 F.3d at 531. Furthermore, the ALJ's decision on credibility must be "based on a consideration of the entire record." *Rogers*, 486 F.3d at 247 (internal quotation omitted). An ALJ's explanation of his or her credibility decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at 248; *see also Mason v. Comm'r of Soc. Sec. Admin.*, No. 1:06–CV–1566, 2012 WL 669930, at *10 (N.D. Ohio Feb. 29, 2012) ("While the ALJ's credibility findings 'must be sufficiently specific', *Rogers*, 486 F.3d at 248, the intent behind this standard is to ensure meaningful appellate review."). In addition, the Regulations list a variety of factors an ALJ must consider in evaluating the severity of symptoms, including a claimant's daily activities; the effectiveness of medication; and treatment other than medication. 20 C.F.R. § 404.1529(c)(3); SSR 16–3p; *but see Ewing v. Astrue*, No. 1:10–cv–1792, 2011 WL 3843692, at *9 (N.D. Ohio Aug. 12, 2011), *adopted*, 2011 WL 3843703 (suggesting that although an ALJ is required to consider such factors, he or she is not required to discuss every factor within the written decision).

Here, the ALJ's analysis supplies substantial evidence supporting his credibility finding and properly considers the requisite factors in evaluating Plaintiff's subjective statements. The

12

ALJ thoroughly discussed the record evidence and concluded that it did not support Plaintiff's subjective complaints, explaining as follows:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, her statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> In July 2015, just after the claimant's alleged disability onset date, the results of physical exams were completely normal, including full range of motion of all extremities with no tenderness or edema (Ex. 4F/ 165). In January 2016, she had a positive hepatitis C antibody test and anti-CCP test, but normal viral load, possibly consistent with a false positive (Ex. 2F/26). Bilateral knee x-rays revealed evidence of patellar tendinosis and mild arthritic changes (Ex. 2F/21), and an MRI of the sacrum revealed findings consistent with sacroiliitis with no significant edema or active inflammation (Exs. 2F/26 and 3F/128). There was also an indication of Dequervein's tenosynovitis (Ex. 2F/20). June 2016 right knee x-rays revealed prepatellar soft tissue swelling and thickening of the proximal patellar tendon (Ex. 13F/ll). Lumbar spine x-rays revealed normal findings, except for sacroiliitis (Ex. 14F/56). In June, July, and November 2016, she engaged in physical therapy (Exs. l 5F and 28F), before she was discharged due to noncompliance with attending visits (Ex. 28F/48). In November 2016, she had also reported that she exercised regularly via physical therapy (Ex. 27F/2). In December 2016, she was in Arkansas visiting family and presented with a report of decreased level of consciousness and disorientation (Ex. 24F/5), but she was in no distress on exam, which revealed that she was slow to respond but responded appropriately and was not disoriented (Ex. 24F/6). She displayed no seizure activity and had normal musculoskeletal and neurological findings (Ex. 24F/6), as well as normal findings on CT scans of her head (Exs. 24F/12 and 25F/8, 50), MRI of her head (Ex. 25F/52), spinal tap (Ex. 25F/ 15), and EEG (Ex. 25F/25, 49), though she reported that a seizure had been diagnosed (Ex. 25F/l). She also alleged a history of stroke (Ex. 25F/3l), though there is no documentation in the record supporting such a history. Similarly, she had reported a history of uterine and cervical cancer (Ex. 2E/2), but the record does not document such a condition.
>
> In February 2017, the claimant reported that she had been sent home from work and had an inability to get out of her bed but had no documented fever, abdominal pain, nausea, vomiting, diarrhea, numbness, or tingling (Ex. 29F/230). There was no evidence of active autoimmune disease, and her symptoms were thought due to conversion disorder (Ex. 29F/236). Her acute weakness spontaneously improved (Ex. 29F/241). In March 2017, she was unable to lift her legs off a bed against gravity, yet, with assistance, she was able to hold her legs off the bed with only slightly diminished strength, and she had a normal hand grip strength and no sensory deficits (Ex. 29F/245). In March and April 2017, she engaged in occupational and physical therapy (Exs. 20F/253–268; 30F/25l–280; 3lF; and 32F).

May 2017 thoracic and lumbar spine x-rays revealed normal findings (Ex. 32F/106, 107), though a CT scan of her lumbar spine revealed sacroiliitis and sacroiliac joint arthritis (Ex. 32F/111). In June 2017, she reported an acute onset of blurry vision while reading a paper in class, and worsening vision while she was driving home (Ex. 32F/155), but, in July 2017, she had normal visual fields without deficit (Ex. 32F/197). A CT scan of her brain revealed normal findings (Ex. 48F/37). In September 2017, she alleged that she fell down stairs due to numbness in her legs (Ex. 33F/4) but had relatively unremarkable findings on exam (Ex. 33F/5). A November 2017 4-day electroencephalogram revealed normal findings with no epileptiform characteristics (Ex. 33F/ 129), and a treatment note indicated that her "spacing out" or staring spells were likely psychogenic, non-epileptic seizures (Ex. 33F/121). In November and December 2017, she engaged in some physical therapy (Ex. 34F).

In March 2018, the claimant began receiving some home healthcare (Exs. 41F and 47F). An April 2018 MRI of her thoracic and lumbar spine revealed normal findings except for arthritic changes at the sacroiliac joints (Ex. 35F/283–287). An MRI of her cervical spine revealed only a small disc herniation without significant cord effect or cervical stenosis (Ex. 35F/289). An April 2014 MRI of her right knee revealed patellofemoral osteoarthritis (Ex. 39F/4), and May 2018 right knee x-rays revealed degenerative changes but no acute fracture or mal-alignment (Ex. 36F/47). In September 2018, she was five feet, nine inches tall, and weighed 224 pounds, consistent with a body mass index (BMI) of 33.12 (Ex. 43F/2).

In January 2019, the claimant presented with weakness and as being unable to ambulate, but her treating physician was unable to find an obvious cause of the weakness, and she had no foot drop (Ex. 48F/65). Electrodiagnostic testing and a CT of her head revealed normal findings (Ex. 48F/76, 80). An MRI of her lumbar spine revealed sclerosis of the sacroiliac joints with only mild fact arthropathy, and an MRI of her cervical spine revealed only a small disc protrusion without critical central canal or foraminal stenosis (Ex. 48F/83). A myocardial perfusion scan revealed normal findings (Ex. 48F/85).

In summary, the record documents numerous healthcare visits to multiple facilities and providers, including treating physician visits, emergency department (ED) care, and hospitalizations, for various complaints, particularly joint pain, stiffness, pseudo-seizures, and lower extremity paresthesia, but the claimant was in no distress, mild distress, or no acute distress on exams, which generally revealed substantially normal findings, except for intermittent, relatively infrequent findings of tenderness, pain, and/or positive Finkelstein test, despite her reports of pain at a level as high at 10 on a 10-point scale (Exs. 2F/6, 9, 10, 15; 3F/21, 36, 37, 42, 103, 154, 177, 204; 4F/11, 55, 78, 165, 193, 216, 225, 226, 231, 244, 256, 258, 280, 313, 361; 9F/8–10, 13, 16; 11F/11, 35; 12F/6; 13F/6, 7; 14F/10, 40; 16F/4, 7, 9, 12, 14; 17F/ 12; 21F/2, 8, 15; 22F/4; 24F/6; 25F/ 17, 33, 34, 39, 40, 68, 74, 99, 106; 26F/2, 6; 27F/3, 8, 32; 29F/6, 40, 62, 90, 91, 196, 210, 251, 270; 30F/186, 208, 217, 225,231;31F/289,290;32F/152, 197, 237,238;33F/20,80, 107, 115, 120, 149;34F/ 135, 139, 140, 146, 147; 35F/7, 22, 23, 101, 106, 214, 254; 36F/59, 60, 68; 37F/

13, 96; 38F/2, 3, 21, 39, 40; 40F/17, 43; 43F/2, 8; 45F/4, 17; 46F/6, 7; and 48F/4, 9, 10, 16, 58, 62).

In conclusion, the claimant has often reported symptoms with little in the way of objective findings. There is an indication of a conversion disorder, but the alleged frequency and intensity of the symptoms are also inconsistent with the longitudinal exam record, including routine findings on exam that she was in only mild distress, no distress, or no acute distress. Nevertheless, there is diagnostic imaging evidence of sacroiliitis, a diagnosis of Dequervein's tenosynovitis/right wrist tendonitis, and some knee imaging findings, as well as evidence of pseudo-seizures, mild to moderate obesity, and periods of lower extremity weakness and fatigue due to conversion disorder, that, in combination, would reasonably limit her to sedentary work with no standing and/or walking for greater than one hour at a time or three hours total in a workday, no sitting for longer than two hours at a time or six hours total in a workday, no more than occasional climbing of ramps or stairs, no more than occasional stooping, kneeling, crouching, or crawling, and no climbing of ladders, ropes, or scaffolds. Because of tendonitis, Dequervein's syndrome, and her report of tremor, she can no more than frequently handle and finger. Because of her pseudo-seizures, she must avoid workplace hazards such as unprotected heights and machinery, and she must not engage in commercial driving.

(R. 18–20.)

Substantial evidence supports the ALJ's credibility findings. First, the ALJ reasonably discounted Plaintiff's allegations on the grounds that the objective evidence did not support her subjective complaints. *See* 20 C.F.R. § 404.1529(c)(2) (objective medical findings are useful in assessing the intensity and persistence of a claimant's symptoms); SSR 16-3P ("A report of minimal or negative findings or inconsistencies in the objective medical evidence is one of the many factors we must consider in evaluating the intensity, persistence, and limiting effects of an individual's symptoms."); *Moruzzi v. Comm'r of Soc. Sec.*, 759 F. App'x 396, 404 (6th Cir. 2018) (affirming ALJ's decision to discount plaintiff's subjective complaints regarding the severity of pain from her physical impairments in part due to lack of confirming objective evidence); *see also Isaacs v. Comm'r of Soc. Sec.*, No. 1:12-CV-591, 2013 WL 4067812, at *15 (S.D. Ohio Aug. 12, 2013), *report and recommendation adopted*, 2013 WL 4833670 (S.D. Ohio Sept. 10, 2013) (citing *Jones v. Sec'y, Health and Human Servs.,* 945 F.2d 1365, 1369–1370 (6th

Cir.1991)) (reliable objective evidence of pain includes medical evidence of muscle atrophy, reduced joint motion, muscle spasm and sensory and motor disruption). Plaintiff attempts to rely on the "clinical and objective support for a finding of disability for the claimant" as "discussed at length in Point I of this brief [arguing that the ALJ improperly evaluated Dr. Gaddam's opinions]." (Statement of Errors 20, ECF No. 7.) However, as discussed *supra*, Dr. Gaddam's treatment notes do not support Plaintiff's subjective complaints of pain. And contrary to Plaintiff's contention, the ALJ reasonably considered that Plaintiff appeared in no acute distress during examinations. (R. 19). *See Ison v. Acting Comm'r of Soc. Sec.*, No. 2:16-CV-00464, 2017 WL 4124586, at *10 (S.D. Ohio Sept. 18, 2017) (finding the ALJ properly supported his credibility assessment by, *inter alia*, "extensively review[ing] the medical opinions of the state agency medical examiners and treating physicians which did not contain evidence that the plaintiff was in acute distress such that her headaches would be disabling"); *Arnwine v. Comm'r of Soc. Sec.*, No. 1:12 CV 1483, 2013 WL 3365137, at *10 (N.D. Ohio July 3, 2013) (upholding credibility assessment where ALJ found, among other things, that plaintiff frequently appeared in no acute distress).

Plaintiff also argues that the ALJ mischaracterized her treatment as "conservative." (Statement of Errors 20–21, ECF No. 7.) The undersigned disagrees. Although Plaintiff asserts that her "impairments are autoimmune in nature," and that "[t]hese conditions are only treated through medication, not surgery," the ALJ did not credit her allegations of autoimmune conditions of lupus or rheumatoid arthritis. (*See* Hearing Transcript, R. 59, 61–62, (Medical expert's testimony finding lack of support for diagnoses of lupus or rheumatoid arthritis); ALJ Decision, R. 12 (listing Plaintiff's severe impairments, which do not include lupus or rheumatoid arthritis)). Plaintiff has not challenged the ALJ's findings that she does not suffer from these

impairments. Thus, the type of treatment ordinarily prescribed for these conditions is irrelevant.

Moreover, although Plaintiff argues that her prescription steroid medication should be considered non-conservative because of the potential for serious side effects, the ALJ expressly found that "the record does not document significant, persistent medication side effects." (R. 22.) Additionally, the ALJ noted that Plaintiff was non-compliant with her prescribed physical therapy (R. 18 (citing R. 1761)), and Dr. Gaddam's October 22, 2018 Disabiliy Impairment Questionnaire indicates that Dr. Gaddam had not seen Plaintiff at that time for 1.5 years, when she should be seen every three months. (R. 4335.) The ALJ therefore properly discounted Plaintiff's testimony in the face of her conservative treatment. *See Richendollar v. Colvin*, No. 1:13-cv-495, 2014 WL 4910477, at \*5 (S.D. Ohio Aug. 7, 2014) ("A claimant's failure to follow treatment can indicate that he is not as disabled as alleged." (citing *Mullen v. Bowen*, 800 F.2d 535, 547 (6th Cir. 1986))); *Tate v. Comm'r of Soc. Sec.*, 467 F. App'x 431, 433 (6th Cir. 2012) (holding that substantial evidence supported ALJ's weighing of treating physician's opinion where there were substantial gaps in treatment); *Lester v. Soc. Sec. Admin.*, 596 F. App'x 387, 389 (6th Cir. 2015) (concluding that ALJ reasonably discounted a doctor's opined limitations where, among other things, the claimant was receiving conservative treatment).

In summary, the undersigned finds that the ALJ properly evaluated Plaintiff's allegations regarding her symptoms and that substantial evidence supports the ALJ's credibility assessment. Although substantial evidence may also support an alternative finding, the ALJ's findings were within the ALJ's permissible "zone of choice" and the Court will not re-weigh the evidence. *See Blakley*, 581 F.3d at 406. Accordingly, it is **RECOMMENDED** that Plaintiff's second contention of error be **OVERRULED**.

## V. DISPOSITION

In sum, from a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision denying benefits. For the foregoing reasons, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## VI. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE